UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NATHAN SOUKUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. |
| | ) | |
| BONZAI EXPRESS OF ST. LOUIS, INC. | ) | |
| D/B/A CRAZY BOWLS AND WRAPS, | ) | |
| | ) | |
| Serve: | ) | JURY TRIAL DEMANDED |
| | ) | |
| Registered Agent: | ) | |
| Keith Kitsis | ) | |
| 10403 Baur Blvd., Ste. A | ) | |
| St. Louis, MO 63132 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Nathan Soukup ("Plaintiff" or "Soukup"), by and through undersigned counsel, and for his Complaint, states as follows:

## PARTIES & JURISDICTION

1.     Plaintiff is an adult resident of St. Louis County, Missouri and a citizen of the United States of America who resides within the boundaries of the Eastern Division of the Eastern District of Missouri.

2.     Defendant Bonzai Express of St. Louis, Inc. d/b/a Crazy Bowls and Wraps[1] ("Defendant" or "CBW") is a Missouri corporation located at 10403 Baur Blvd., Ste. A, St. Louis, MO 63132 and doing business within the Eastern District of Missouri.

3.     This Court has original jurisdiction over Plaintiff's claims pursuant to the Family

---

[1] Crazy Bowls and Wraps is a fictitious name registered by Bonzai Express of St. Louis, Inc. with the Missouri Secretary of State.

Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq* and 28 U.S.C. § 1331.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant may be found in this District and the challenged conduct occurred in this District.

## FACTUAL BACKGROUND

5.     Defendant operates a chain of approximately 16 restaurants in the St. Louis area, both in Missouri and Illinois.

6.     Defendant's restaurants are located within 75 miles of each other and within 75 miles of Defendant's principal office at 10403 Baur Blvd., Ste. A, St. Louis, MO 63132.

7.     Defendant collectively employed at least fifty (50) people at its restaurants and principal office.

8.     Soukup commenced full-time employment with CBW in September 2017 and was continuously employed by CBW until January 2019.

9.     CBW paid Soukup a salary and benefits including but not limited to a car allowance, phone reimbursement, health benefits, retirement benefits, paid time off ("PTO") and paid vacation.

10.     At all relevant times herein, Keith Kitsis ("Kitsis") owned CBW and was Soukup's supervisor.

11.     In January 2018, CBW promoted Soukup to district manager in the Cincinnati, Ohio area.

12.     In late 2018, CBW closed its Ohio restaurant(s) and transferred Soukup to the St. Louis area, where he worked as a district manager with responsibility for multiple CBW locations.

13.     In the twelve (12) months preceding January 2019, Soukup worked at least 1,250 hours with CBW.

14.    On December 26, 2018, Soukup was diagnosed with acute bronchitis and prescribed medication, including an antibiotic.

15.    Soukup informed Kitsis of his condition and diagnosis.

16.    Between December 27, 2018 and January 1, 2019, Soukup's health deteriorated. He continued to suffer from symptoms of bronchitis and had difficulty breathing, requiring him to visit an urgent care and miss two days of work.

17.    Soukup kept Kitsis informed of his (Soukup's) medical condition and deteriorating health during this period.

18.    On January 2, 2019, as a result of his medical condition and deteriorating health, Soukup was admitted to Mercy Hospital's emergency department.  He underwent chest x-rays and was prescribed additional medication(s) for acute bronchitis.

19.    Soukup notified Kitsis of this hospital admission and provided information about his medical condition, including that he had shortness of breath, chest pains, and diminished lung capacity and that he (Soukup) needed to see a respiratory specialist and was prescribed medications and breathing treatments.

20.    On January 3, 2019, Kitsis asked if Soukup had returned to work.  Soukup replied that he was still "struggling" but had returned to work and visited the Tesson restaurant, and that he would visit CBW's Lindell location and attend a managers' meeting that afternoon.

21.    On January 3, 2019, CBW issued Soukup a "Disciplinary Action Form" that stated it was Soukup's "final warning."  This was the first disciplinary action Soukup received during his employment with CBW.  Kitsis sent the Disciplinary Action Form to create a pre-textual paper trail and/or to pretextually facilitate Soukup's termination.

22.    On January 4, 2019, Soukup informed Kitsis that he (Soukup) needed to take the

next two days (*i.e.*, January 5-6, 2019) off for health reasons.

23.     Throughout January 5-6, 2019, Kitsis repeatedly instructed Soukup to address customer complaints at his assigned restaurants and contact each of his restaurants regarding whether they had sufficient product on hand.  During one phone call, Kitsis berated Soukup because one restaurant ran out of chicken, told Soukup he should have been at the store in person, and hung up on Soukup.

24.     On January 7, 2019, Soukup returned to work and worked that day and the next.

25.     On the evening of January 8, 2019, Soukup collapsed at home and was driven to Mercy Hospital's emergency department by a relative.  Soukup was admitted to the hospital overnight.

26.     Soukup was diagnosed with RSV, coronavirus, and acute airway disease.  He was placed in an isolation room and hospital staff had to observe infection control precautions when treating and interacting with him.

27.     Soukup informed Kitsis of his medical condition and hospital admission the morning of January 9, 2019, while Soukup was still in the hospital.  Soukup also informed another CBW employee of his hospital admission, and that employee notified Kitsis thereof.

28.     Kitsis told Soukup he would need a doctor's release before returning to work and to use PTO until he was able to come back to work.

29.     On the evening of January 9, 2019, Kitsis sent Soukup a text message that said, "It sounds like you will be off [the] of this week.  Please request time off.  Bring your Doctors release when you return to work."  Soukup replied that he was "highly contagious and ha[d] to wear a mask for the next 5 days," had contracted two viruses, and was in and out of consciousness since the night before.

30.     After his discharge from the hospital on the afternoon of January 9, 2019 through January 15, 2019, Soukup recuperated at home and was treated by his physicians.  He was scheduled to work more than three consecutive days during this period but was unable to do so due to his medical condition.

31.     Soukup was unable to perform the functions of his district manager position due to his medical condition and could not return to work.

32.     On January 11, 2019, Soukup saw a pulmonary specialist, who determined Soukup's lungs needed to be treated every 4-6 hours with breathing treatments and gave Soukup an in-home nebulizer and prescribed medications, including antibiotics.

33.     On January 11, 2019, Soukup also saw his primary care physician for treatment.

34.     On January 12, 2019, Soukup began to have fevers that would last up to four hours and cause his whole body to shake or spasm.

35.     On January 13, 2019, Soukup's left ear filled with fluid, causing significant pain to the point Soukup drove himself to Mercy Hospital's emergency department.  He was diagnosed with an infected ear drum.

36.     On January 13, 2019, in response to the updates provided by Soukup about his status and health conditions, Kitsis informed Soukup by email that Soukup was "unable to perform the duties of [his] position as District Manager.  Effective today you are relieved of your position until which date you have a medical release to return to work.  You will be paid through January 12, 2019."

37.     Kitsis's email further informed Soukup that he "qualif[ied] to take family medical leave per FMLA (see employee manual)" and asked Soukup to keep Kitsis and another CBW employee informed of the date he would return to work after receiving a doctor's release.

5

38.     Soukup replied that he had a doctor's appointment the next day to determine if he was healthy enough to return to work.  Soukup also said he had a "nearly blown ear drum" as a result of his RSV and was being treated in the emergency department.

39.     On January 14, 2019, Soukup saw his primary care physician for further treatment.

40.     On January 14, 2019 at 12:22 p.m. Soukup informed Kitsis that he was waiting for test results and should know in a few hours if he was cleared by the doctor to return to work.

41.     Four minutes later, Kitsis told Soukup that "in the interest of continuing to operate the business, as well as due to your medical condition, I am forwarding your email."  Kitsis further stated, "You will no longer have email access using your [CBW] email address."

42.     On January 14, 2019 at 5:04 p.m., Soukup informed Kitsis that a chest x-ray revealed he had pneumonia.  Soukup stated he had to pass a pulmonary breathing test, which he had to wait until at least Friday, January 18, 2019 to take, before he could return to work.  Soukup stated he would be out until "this weekend or Monday" (*i.e.*, January 19-21, 2019) and would contact Kathleen Hennen ("Hennen"), a CBW employee, regarding his "PTO/leave."

43.     Approximately two hours later, Kitsis told Soukup to return his company laptop, master key, and any other company property in his possession by the next day (January 15, 2019).

44.     Soukup replied that he "may only be out a few more days but get the feeling my employment is being terminated for being sick."  Soukup noted he only missed four (4) days of work and had been out due to multiple hospital visits before asking Kitsis whether his earlier representations that Soukup could return to work with a medical release were still true.  Kitsis did not respond.

45.     On January 15, 2019 at 12:32 a.m., Soukup emailed Hennen to ask how much PTO he had used and to request a copy of CBW's FMLA request form.

46.     Later that morning, Hennen replied that Soukup had 66.46 hours of PTO and did not need to start FMLA paperwork until he had used more of his PTO hours.

47.     Soukup replied that he still wanted to complete FMLA paperwork.

48.     On January 15, 2019 at approximately 3:25 p.m., Kitsis called Soukup at home. Kitsis said he was sending Soukup termination paperwork and a severance package proposal. Soukup and Kitsis discussed Soukup's medical condition and the fact that he was out on leave. Kitsis told Soukup to check his personal email for the termination documents.

49.     On January 15, 2019 at 4:13 p.m., Kitsis emailed a letter to Soukup that stated Soukup's employment with CBW was terminated as of the same day.   Kitsis attached a Disciplinary Action Form to the letter to create a pre-textual paper trail and/or to pretextually facilitate Soukup's termination.

50.     Soukup's termination left him unemployed and without an income or benefits, including health insurance.

51.     After his termination, Soukup learned CBW notified Soukup's health insurance provider that he had been terminated on January 9, 2019, and his health insurance coverage ended the same day.

52.     Soukup's illness and/or physical condition involved inpatient care at a hospital and/or continuing treatment by a health care provider.

53.     Soukup's illness and/or physical condition resulted in a period of incapacity of more than three consecutive calendar days, during which time he was unable to perform the functions of his district manager position.

54.      Soukup's illness and/or physical condition and required multiple treatments by a health care provider and/or treatment by a health care provider on at least one occasion which

resulted in a regimen of continuing treatment under the supervision of the health care provider (*i.e.*, a course of prescription medication).

55.     CBW was aware that Soukup's illness and/or physical condition made him unable to perform the functions of his district manager position.

56.     Soukup provided sufficient information about his illness and/or physical condition to CBW to enable CBW to understand that the reason for Soukup's requested leave was covered by the FMLA.

## COUNT I

## INTERFERENCE WITH RIGHTS PROTECTED BY THE FMLA

57.     Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

58.     At all times relevant hereto, Plaintiff was an eligible employee within the definition of the FMLA because Plaintiff had been employed for at least twelve months by CBW, had logged at least 1,250 hours of service with CBW during the twelve-month period preceding the dates of his taking and/or requesting leave from work, and was employed at a work site where CBW employed fifty or more employees within seventy-five miles of that worksite. *See* 29 U.S.C. § 2611(2).

59.     At all times relevant hereto, Defendant was an employer within the definition of the FMLA because Defendant was engaged in commerce or an industry or activity affecting commerce and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. *See* 29 U.S.C. § 2611(4).

60.     Soukup suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

61.     Soukup requested leave for a reason covered by the FMLA, namely that his serious

health condition made him unable to perform the functions of his position as district manager. *See* 29 U.S.C. § 2612(a)(1)(D).

62.     Plaintiff gave Defendant notice of his need for leave under the FMLA.

63.     Plaintiff provided sufficient information to enable Defendant to understand that Plaintiff suffered from a serious health condition and that he requested leave for a reason covered by the FMLA.

64.     Defendant was aware that Soukup suffered from a serious health condition that made him unable to perform the functions of his district manager position and that Soukup requested leave for a reason covered by the FMLA.

65.     Defendant terminated Plaintiff's employment on or about January 15, 2019.

66.     Defendant deterred Plaintiff, who was incapacitated and receiving continuing treatment from a health care provider, from taking additional leave covered by the FMLA.

67.     Defendant impermissibly considered Plaintiff's request to take FMLA leave as a factor in his discharge.

68.     Defendant interfered with, restrained, or denied Plaintiff's exercise or attempted exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

69.     Defendant's termination of Plaintiff denied Plaintiff the medical leave benefits to which he was entitled under the FMLA.

70.     Defendant's termination has caused Plaintiff to lose wages and other benefits of his employment with CBW, including employee benefits and health insurance.

71.     As a direct and proximate result of Defendant's interference with the rights afford to him by the FMLA, Plaintiff has suffered damages.

72.     Defendant did not have a legitimate business reason for terminating Plaintiff.

73.     Defendant's conduct was not in good faith, entitling Plaintiff to an award of liquidated damages.

74.     Defendant's conduct was outrageous and extreme, and was intentional or in reckless disregard of Plaintiff's rights.

WHEREFORE Plaintiff Nathan Soukup respectfully requests this Court, after trial by jury, enter judgment for Plaintiff and against Defendant on Count I of this Complaint, and prays for an award of actual damages in an amount to be proved at trial, including but not limited to back pay, front pay, compensatory damages, together with interest thereon, liquidated damages, reasonable attorneys' fees, expert fees and costs, an order reinstating Soukup to his district manager position, and any other further relief available at law or equity that this Court deems just and proper under the circumstances.

## COUNT II

## RETALIATION FOR EXERCISING RIGHTS PROTECTED BY THE FMLA

75.     Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

76.     At all times relevant hereto, Plaintiff was an eligible employee within the definition of the FMLA because Plaintiff had been employed for at least twelve months by CBW, had logged at least 1,250 hours of service with CBW during the twelve-month period preceding the dates of his taking and/or requesting leave from work, and was employed at a work site where CBW employed fifty or more employees within seventy-five miles of that worksite. *See* 29 U.S.C. § 2611(2).

77.     At all times relevant hereto, Defendant was an employer within the definition of the FMLA because Defendant was engaged in commerce or an industry or activity affecting commerce and employed fifty or more employees for each working day during each of twenty or

more calendar workweeks in the current or preceding calendar year. *See* 29 U.S.C. § 2611(4).

78.     Soukup suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

79.     Soukup requested leave for a reason covered by the FMLA, namely that his serious health condition made him unable to perform the functions of his position as district manager. *See* 29 U.S.C. § 2612(a)(1)(D).

80.     Plaintiff provided sufficient information to enable Defendant to understand that Plaintiff suffered from a serious health condition and that he requested leave for a reason covered by the FMLA.

81.     Defendant was aware that Soukup suffered from a serious health condition that made him unable to perform the functions of his district manager position and that Soukup requested leave for a reason covered by the FMLA.

82.     Plaintiff engaged in conduct protected by the FMLA by requesting and taking medical leave for his serious health condition.

83.     Defendant terminated Plaintiff's employment in retaliation for taking time off from work for medical leave and for lawfully requesting medical leave under the FMLA.

84.     Defendant discharged or discriminated against Plaintiff in violation of 29 U.S.C. § 2615(a)(2).

85.     Plaintiff's termination was an adverse employment action caused by the exercise of his rights under the FMLA.

86.     Defendant impermissibly considered Plaintiff's use of FMLA leave as a factor in Defendant's decision to discharge Plaintiff.

87.     Defendant did not have a legitimate business reason for discharging Plaintiff.

88.     Defendant's conduct was intentional.

89.     Plaintiff's discharge has caused Plaintiff to lose wages and other benefits of his employment with CBW, including employee benefits and health insurance.

90.     As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages.

WHEREFORE Plaintiff Nathan Soukup respectfully requests this Court, after trial by jury, enter judgment for Plaintiff and against Defendant on Count II of this Complaint, and prays for an award of actual damages in an amount to be proved at trial, including but not limited to back pay, front pay, compensatory damages, together with interest thereon, liquidated damages, reasonable attorneys' fees, expert fees and costs, an order reinstating Soukup to his district manager position, and any other further relief available at law or equity that this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues in this case which are so triable.

Respectfully submitted,


By:     _____/s/ Kevin J. Dolley_____
        Kevin J. Dolley, #54132MO
        LAW OFFICES OF KEVIN J. DOLLEY, LLC
        2726 S. Brentwood Blvd.
        St. Louis, MO 63144
        (314) 645-4100 (office)
        (314) 736-6216 (fax)
        kevin@dolleylaw.com

        *Attorney for Plaintiff Nathan Soukup*